UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION

Case No.: 0:23-cv-60008

RODRIGO ROJAS, MOISES ROJAS, and
LUIS ROJAS,

    Plaintiffs,

v.

SOUTHERN UNDERGROUND
INSTALLATIONS, INC., SOUTHERN
UNDERGROUND INDUSTRIES, INC.,
and BELSERI COMERFORD,

    Defendants.
_____/

## COMPLAINT

Plaintiffs Rodrigo Rojas, Moises Rojas, and Luis Rojas sue Defendants Southern Underground Installations, Inc., Southern Underground Industries, Inc., and Belseri Comerford (together, the "Defendants") and allege as follows:

### JURISDICTION AND VENUE

1. Pursuant to 28 U.S.C § 1331, this Court has original jurisdiction over Plaintiffs' claims arising under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA").

2. The Court may exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because the claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy.

3. Pursuant to 28 U.S.C. § 1391(b), venue lies in Broward County because a substantial part of the events giving rise to these claims occurred there.

4. All conditions precedent have been performed or were waived or excused.

1

**PARTIES**

5. At all times material hereto, Plaintiff Rodrigo Rojas ("Rodrigo") was a natural person and citizen of the State of Florida.

6. Rodrigo is a directional drilling specialist.

7. At all times material hereto, Plaintiff Moises Rojas ("Moises") was a natural person and citizen of the State of Florida.

8. Moises is proficient in directional drilling.

9. At all times material hereto, Plaintiff Luis Rojas ("Luis") was a natural person and citizen of the State of Florida.

10. Luis is proficient in directional drilling.

11. At all times material hereto, Defendant Southern Underground Installations, Inc., was a Florida Corporation with its principal place of business in Tamarac, Florida.

12. The principal purpose Southern Underground Installations, Inc., was to provide drilling services.

13. At all times material hereto, Defendant Southern Underground Industries, Inc., was a Florida Corporation with its principal place of business in Tamarac, Florida.

14. The principal purpose of Southern Underground Industries, Inc., was to provide trenching services.

15. At all times material hereto, Defendant Belseri Comerford ("Comerford") was a natural person and a citizen of the State of Florida.

16. At all times material hereto, Southern Underground Industries, Inc., and Southern Underground Installations, Inc. (together the "Southern Underground Defendants"), had interrelated operations, shared common management, had centralized control of labor relations,

and had common ownership or financial control. Accordingly, they are joint employers as a matter of law.

17. At all times material hereto, Comerford was involved in the day-to-day operation of the Southern Underground Defendants had some direct responsibility for the supervision of Plaintiffs, had the power to hire or fire Plaintiffs, controlled Plaintiffs' work schedules or terms, conditions, or privileges of employment, determined the rate and method of payment, or maintained employment records, or some combination thereof.

## GENERAL ALLEGATIONS

18. On or about November 2017, Rodrigo received a phone call from an employee of the Southern Underground Defendants who informed him that Comerford and the Southern Underground Defendants had interest in partnering with him because of his directional drilling knowledge and capabilities.

19. After this phone all, Rodrigo and his son Moises met with Comerford in person.

20. During this in-person meeting Comerford explained to Rodrigo that the Southern Underground Defendants subcontracted all directional drilling work out to other companies.

21. Comerford expressed an interest in partnering with Rodrigo, a directional drilling specialist, to keep the directional drilling work within the Southern Underground Defendants.

22. Comerford and the Southern Underground Defendants promised Rodrigo that he would receive a salary and, as additional compensation, 10% of the gross revenues from all directional drilling work originated by Rodrigo and 5% of the gross revenue from all other directional drilling work performed on behalf of the Southern Underground Defendants (the "gross revenue earnings") if he agreed to work for the Southern Underground Defendants.

23. Thereafter, Comerford contacted Rodrigo on multiple occasions via telephone and promised that the Southern Underground Defendants would pay Rodrigo a salary and the gross revenue earnings if he agreed to work for the Southern Underground Defendants as a directional drilling specialist.

24. The following year, Rodrigo met with Comerford and David Casique ("Casique"), a production manager for one of the Southern Underground Defendants. During this meeting, Comerford promised that the Southern Underground Defendants would pay Rodrigo a salary and the gross revenue earnings if he agreed to work for the Southern Underground Defendants as a directional drilling specialist.

25. Months later, Rodrigo met with Comerford and Casique at Comerford's home.

26. During this meeting, Comerford promised that the Southern Underground Defendants would pay Rodrigo a salary and the gross revenue earnings if he agreed to work for the Southern Underground Defendants as a directional drilling specialist.

27. Rodrigo accepted the Defendants' offer.

28. Relying on the Defendants' promises and representations, Rodrigo began soliciting projects for the Southern Underground Defendants and working for the Southern Underground Defendants.

29. Sometime later, Comerford promised Luis and Moises that if they would be paid a salary and that Rodrigo would receive 10% of the gross revenue earnings from all directional drilling work they originated if they agreed to work for the Southern Underground Defendants.

30. In consideration for continued employment with the Southern Underground Defendants, Defendants promised Rodrigo that the gross revenue earning would also include 10% of the gross revenue earnings from all directional drilling work originated by Luis and/or Moises.

31. In reliance on Defendants' promises, Luis and Moises accepted the Southern Underground Defendants' offer and quit their jobs.

32. The Plaintiffs regularly worked more than forty (40) hours per week.

33. Plaintiffs performed repetitive operations with their hands, physical skill, and energy. Specifically, Plaintiffs performed actual directional drilling work and manual labor at each of the projects.

34. Directional drilling was Rodrigo's primary duty.

35. Directional drilling was Luis's primary duty.

36. Directional drilling was Moises's primary duty.

37. The Plaintiffs did not manage the Southern Underground Defendants, nor did they manage a customarily recognized department or subdivision thereof.

38. Southern Underground employed project managers like Casique to oversee Plaintiffs' work.

39. Plaintiffs were supervised by Casique and/or Comerford.

40. During their employment with Defendants, Plaintiffs originated approximately 40 directional drilling contracts and projects that generated an estimated $9,000,000.00 in gross revenue for the Southern Underground Defendants.

41. During their employment, Plaintiffs worked on directional drilling contracts and projects originated by the Southern Underground Defendants that generated an estimated $2,000,000.00 in gross revenues.

42. During their employment, Plaintiffs repeatedly asked Defendants about the status of the due and owing gross revenue earnings.

43. Comerford and the Southern Underground Defendants repeatedly promised to pay and asked for more time to pay.

44. The Southern Underground Defendants never paid Rodrigo the gross revenue earnings.

45. Plaintiffs resigned because Defendants failed to pay the gross revenue earnings.

### COUNT I – FLSA VIOLATION (UNPAID OVERTIME WAGES)
**Rodrigo Rojas Against All Defendants**

Plaintiff Rodrigo Rojas incorporates paragraphs 1 through 45 as though fully set forth herein.

46. At all times material hereto, Rodrigo was a covered employee under the FLSA.

47. At all times material hereto, Defendants were engaged in interstate commerce.

48. The FLSA applies to the Southern Underground Defendants' business activities and to Rodrigo's work for Defendants.

49. In soliciting directional drilling work for Defendants, Rodrigo regularly used the instrumentalities of interstate commerce.

50. The Southern Underground Defendants operated as an organization which sold or marketed its services or goods to customers throughout the United States via the internet, solicited funds from sources outside of Florida, accepted funds from sources outside of Florida, used telephonic transmissions and sent mail and e-mail over state lines to do business, or transmitted funds outside of Florida or some combination thereof.

51. The Southern Underground Defendants operated as an organization which has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

52. The Southern Underground Defendants regularly employed two or more employees for the relevant time period.

53. The Southern Underground Defendants, upon information and belief, had individually or collectively, gross revenues which exceeded $500,000.00 for each of the past three (3) years and have otherwise engaged in interstate commerce.

54. Rodrigo's services affected interstate commerce.

55. Thus, the Southern Underground Defendants were at all times material hereto a covered enterprise under the FLSA.

56. Rodrigo was a non-exempt employee of the Southern Underground Defendants, who worked in excess of forty (40) hours during one or more workweeks within the three (3) years of the filing of this lawsuit.

57. Defendants had notice of, or had actual knowledge of, all the hours worked by Rodrigo, including any hours in excess of forty (40) hours per week.

58. The Southern Underground Defendants failed to pay Rodrigo at the appropriate overtime rate for hours worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 201-209.

59. Defendants were "employers" under the FLSA, and are, thus, jointly and severally liable for overtime wages.

60. Defendants' violations of the FLSA were willful in that they knew they were in violation of the FLSA. Alternatively, Defendants acted in reckless disregard as to whether they were violating the FLSA.

61. Rodrigo is entitled to liquidated damages.

62. Rodrigo suffered damages as a result of the Defendants' violations.

63. Rodrigo has retained the undersigned law firm to represent him in this action and is obligated to pay reasonable fees and costs.

**WHEREFORE**, Plaintiff Rodrigo Rojas respectfully requests that this Court enter a judgment decreeing that Defendants Southern Underground Industries Inc., Southern Underground Installations, Inc., and Belseri Comerford willfully or intentionally violated the FLSA, enjoining their violations of the FLSA, and awarding actual damages for unpaid overtime, liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. § 216, and any additional relief deemed appropriate by the Court.

## COUNT II – FLSA VIOLATION (UNPAID OVERTIME WAGES)
**Moises Rojas Against All Defendants**

Plaintiff Moises Rojas incorporates paragraphs 1 through 45 as though fully set forth herein.

64. At all times material hereto, Moises was a covered employee under the FLSA.

65. At all times material hereto, the Southern Underground Defendants were engaged in interstate commerce.

66. The FLSA applies to the Southern Underground Defendants' business activities and to Moises' work for the Southern Underground Defendants.

67. In soliciting directional drilling work for Defendants, Moises regularly used the instrumentalities of interstate commerce.

68. The Southern Underground Defendants operated as an organization which sold or marketed its services or goods to customers throughout the United States via the internet, solicited funds from sources outside of Florida, accepted funds from sources outside of Florida, used telephonic transmissions and sent mail and e-mail over state lines to do business, or transmitted funds outside of Florida or some combination thereof.

69. The Southern Underground Defendants operated as an organization which has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

70. The Southern Underground Defendants regularly employed two or more employees for the relevant time period.

71. The Southern Underground Defendants, upon information and belief, had individually or collectively, gross revenues which exceeded $500,000.00 for each of the past three (3) years and have otherwise engaged in interstate commerce.

72. Moises's services affected interstate commerce.

73. Thus, the Southern Underground Defendants were at all times material hereto a covered enterprise under the FLSA.

74. Moises was a non-exempt employee of the Southern Underground Defendants who worked in excess of forty (40) hours during one or more workweeks within the three (3) years of the filing of this lawsuit.

75. Defendants had notice of, or had actual knowledge of, all the hours worked by Moises, including any hours in excess of forty (40) hours per week.

76. The Southern Underground Defendants failed to pay Moises at the appropriate overtime rate for hours worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 201-209.

77. Defendants were "employers" under the FLSA, and are, thus, jointly and severally liable for overtime wages.

78. Defendants' violations of the FLSA were willful in that they knew they were in violation of the FLSA. Alternatively, Defendants acted in reckless disregard as to whether they were violating the FLSA.

79. Moises is entitled to liquidated damages.

80. Moises suffered damages as a result of the Defendants' violations.

81. Moises has retained the undersigned law firm to represent him in this action and is obligated to pay reasonable fees and costs.

**WHEREFORE**, Plaintiff Moises Rojas respectfully requests that this Court enter a judgment decreeing that Defendants Southern Underground Industries Inc., Southern Underground Installations, Inc., and Belseri Comerford willfully or intentionally violated the FLSA, enjoining their violations of the FLSA, and awarding actual damages for unpaid overtime, liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. § 216, and any additional relief deemed appropriate by the Court.

### COUNT III – FLSA VIOLATION (UNPAID OVERTIME WAGES)
**Luis Rojas Against All Defendants**

Plaintiff Luis Rojas incorporates paragraphs 1 through 45 as though fully set forth herein.

82. At all times material hereto, Luis was a covered employee under the FLSA.

83. At all times material hereto, the Southern Underground Defendants were engaged in interstate commerce.

84. The FLSA applies to the Southern Underground Defendants' business activities and to Luis's work for the Southern Underground Defendants.

85. In soliciting directional drilling work for Defendants, Luis regularly used the instrumentalities of interstate commerce.

86. The Southern Underground Defendants operated as an organization which sold or marketed its services or goods to customers throughout the United States via the internet, solicited funds from sources outside of Florida, accepted funds from sources outside of Florida, used telephonic transmissions and sent mail and e-mail over state lines to do business, or transmitted funds outside of Florida or some combination thereof.

87. The Southern Underground Defendants operated as an organization which has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

88. The Southern Underground Defendants regularly employed two or more employees for the relevant time period.

89. The Southern Underground Defendants, upon information and belief, had individually or collectively, gross revenues which exceeded $500,000.00 for each of the past three (3) years and have otherwise engaged in interstate commerce.

90. Luis's services affected interstate commerce.

91. Thus, the Southern Underground Defendants were at all times material hereto a covered enterprise under the FLSA.

92. Luis was a non-exempt employee of the Southern Underground Defendants who worked in excess of forty (40) hours during one or more workweeks within the three (3) years of the filing of this lawsuit.

93. Defendants had notice of, or had actual knowledge of, all the hours worked by Luis, including any hours in excess of forty (40) hours per week.

94. The Southern Underground Defendants failed to pay Luis at the appropriate overtime rate for hours worked in excess of forty (40) hours per week in violation of 29 U.S.C. § 201-209.

95. Defendants were "employers" under the FLSA, and are, thus, jointly and severally liable for overtime wages.

96. Defendants' violations of the FLSA were willful in that they knew they were in violation of the FLSA. Alternatively, Defendants acted in reckless disregard as to whether they were violating the FLSA.

97. Luis is entitled to liquidated damages.

98. Luis suffered damages as a result of the Defendants' violations.

99. Luis has retained the undersigned law firm to represent him in this action and is obligated to pay reasonable fees and costs.

**WHEREFORE**, Plaintiff Luis Rojas respectfully requests that this Court enter a judgment decreeing that Defendants Southern Underground Industries Inc., Southern Underground Installations, Inc., and Belseri Comerford willfully or intentionally violated the FLSA, enjoining their violations of the FLSA, and awarding actual damages for unpaid overtime, liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. § 216, and any additional relief deemed appropriate by the Court.

### COUNT IV – BREACH OF CONTRACT
### Rodrigo Rojas Against All Defendants

Plaintiff Rodrigo Rojas incorporates paragraphs 1 through 45 as though fully set forth herein.

100. Rodrigo entered an oral contract with Defendants wherein Defendants agreed to pay Rodrigo the gross revenue earnings in exchange for the provision of directional drilling services and the solicitation of directional drilling business on Defendants' behalf.

101. Rodrigo performed under the terms of the contract.

102. Defendants materially breached the contract by refusing to pay Rodrigo Rojas the gross revenue earnings.

103. Rodrigo suffered damages.

**WHEREFORE**, Plaintiff Rodrigo respectfully requests that this Court enter a judgment awarding damages, attorney's fees and costs pursuant to Fla. Stat. § 448.08, interest, and any additional relief deemed appropriate by the Court.

### COUNT V – PROMISSORY ESTOPPEL
### Rodrigo Rojas Against All Defendants

Plaintiff Rodrigo Rojas incorporates paragraphs 1 through 45 as though fully set forth herein.

104. Rodrigo brings this Count in the alternative to Count IV, VI, and VII.

105. Defendants promised to pay Rodrigo the gross revenue earnings.

106. Defendants made this promise, or reasonably expected the promise, to induce Rodrigo Rojas to accept an offer of employment from Defendants and to continue working for Defendants.

107. Rodrigo detrimentally relied on Defendants' promise in accepting Defendants' offer of employment and in generating millions of dollars of revenue for Defendants.

108. The circumstances are such that injustice can only be avoided by enforcing the promise made by Defendants.

**WHEREFORE,** Plaintiff Rodrigo Rojas respectfully requests that this Court enter a judgment awarding damages, attorney's fees and costs pursuant to Fla. Stat. § 448.08, interest, and any additional relief deemed appropriate by the Court.

### COUNT VI – UNJUST ENRICHMENT
**Plaintiffs Against All Defendants**

Plaintiffs incorporate paragraphs 1 through 45 as though fully set forth herein.

109. Plaintiffs bring this Count in the alternative to Counts IV, V, and VII.

110. Plaintiffs conferred a direct benefit on Defendants.

111. Defendants had knowledge of the direct benefit.

112. Defendants voluntarily accepted and retained the direct benefits conferred.

113. The circumstances are such that it would be inequitable for Defendants to retain the benefit without paying the value thereof.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment awarding damages, attorney's fees and costs pursuant to Fla. Stat. § 448.08, interest, and any additional relief deemed appropriate by the Court.

### COUNT VII – QUANTUM MERUIT
**Plaintiffs Against All Defendants**

Plaintiffs incorporate paragraphs 1 through 45 as though fully set forth herein.

114. Plaintiffs bring this Count in the alternative to Counts IV, V, and VI.

115. Plaintiffs provided benefits to Defendants.

116. Defendants assented to and received the benefits.

117. In the ordinary course of common events, a reasonable person receiving such benefits would normally expect to pay for those benefits.

118. Defendants did not pay for the benefits provided by Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request that this Court enter a judgment awarding damages, attorney's fees and costs pursuant to Fla. Stat. § 448.08, interests, and any additional relief deemed appropriate by the Court.

## DEMAND FOR JURY TRIAL

Plaintiffs Rodrigo Rojas, Luis Rojas, and Moises Rojas hereby demand a trial by jury on all issues so triable.

By: */s/Alejandro F. Garcia*
Alejandro F. Garcia, Esq
Florida Bar No. 98505
agarcia@ramhofergarcia.com
Alexis M. De La Rosa
Florida Bar No. 1038679
adelarosa@ramhofergarcia.com
RAMHOFER | GARCIA
11900 Biscayne Blvd.
Suite 742
North Miami, FL 33181
Telephone: (305) 481-9733
Facsimile: (954) 697-0341
*Attorneys for Plaintiffs*